We will now hear argument in 22-255CV, Elliot v. Cartagena. Let's see, we have Mr. Floor, and you would like to reserve two minutes for rebuttal. Is that right? Yes, sir. Very good. You've got to take a minute. Get settled at your tables. Thank you. My client wrote one of the biggest hits, hip-hop hits, in 2016. It was played in every single club for at least a half a year. It's something truly momentous. And for a young songwriter-musician who's up and coming and not well-to-do, this is a huge deal. It's life-changing. It is literally like winning the lottery. But it's more than just the money. It also establishes you as a talent and a reputation, and it gives you a career and a new life. And that, in this case, is what was taken from him by the defendants when they didn't credit him, when they didn't include him on the royalty splits, when they didn't include him on the copyright registrations. Since then, he's been doing manual labor, taking care of his mother, and living in a neighborhood, quite frankly, where bullets literally fly through the front of his house. He had a new life taken from him. So let's look at the complaint. What was the first cause of action alleged? It was a declaration of copyright authorship. Why? Because credit should be given— Yes? Just because we have limited time. Sure. Would you mind concentrating? The first question I would like to ask you is— Of course. Could you show us—well, actually, answer the question and then show us where in the record, if at all, it happened, where you disputed, in other words, to show that there was a genuine dispute of material fact as to whether the document proffered by the other side, as basically the unsigned version of the contract, is identical to what your client signed? Because you agree that he signed a piece of paper, right? We agree that he signed a piece of paper, but— So do you dispute that that is an accurate reflection of the words that were signed? I know that you have evidentiary admissibility questions. But where you actually, if you did, dispute that that's actually what he signed? Absolutely, Your Honor. Because it was not clear to me. And as I look for that, I'm going to cite it. But my client submitted a declaration stating that he did not— that the content of this was not what he recalled discussing with Defendant Cartagena, also known as Fat Joe, at the meeting. And it's not what Fat Joe told him was in the document. Again, my client is not legally sophisticated. So there's a declaration in the record of that, and I'm going to the index right now. In addition, other evidence— So I guess where I'm going here is, I mean, I'm looking, I think it's at page 494 of the record, where I think this was from your Rule 56.1 statement, or the response to the other side's, that the document produced by the defendants does not comport with what Cartagena told Plaintiff was in the document. Now, that's not a denial of what was in the document. But then this, nor with Plaintiff's recollection of the contents of the document. But before, I thought your client had said that he wasn't sure what it said. And there's these things like, from what I could understand, it said this, that, or the other thing. Correct. Because he could actually dispute and say, no, that's not what I signed. That that language was not in what I signed. What's your best citation before he denied it? It's his declaration, which you just read, saying to his recollection, because he's not an attorney, he's not sophisticated, the terms being discussed and things like this, he's not going to recall with preciseness the way we would, as attorneys and judges who've spent our lives practicing law, he's not going to recall that. But what he said is, in that declaration, and there's other evidence of why this is unreliable, and I do want to get to that. Yeah, but just let's focus analytically on this point for the moment. He said, I'm not sure what I signed, because he's being truthful. Because he's not going to say he remembers or doesn't remember something that he doesn't. But what he was told was in this document. Yeah, but that's different. Remember, we're not asking what he was told. We're asking whether he denies that was in the document. Because then you can argue, well, he fraud and inducement, he was lied about, what was in it. Just we're focusing analytically on the question of whether he denies that this is the document he signed. He does deny it. His declaration does say from his brief reading of it, he does not comport with what he remembers. It does say that. Because, I mean, the thing is, from what I could understand, he says, it seemed to state that I was going to be compensated. But, of course, the document produced by the other side says he's being compensated. So there's no inconsistency there. Is it then all turned on and credited as a writer? It seems to state I was going to be compensated and credited as a writer. That seems to be the only specific thing that he's claiming to remember that is different. Any other specific thing that he's saying specifically that X or Y is different? Correct. That is a material difference. But, again, he's going off his conversations, like I've said, with Defendant Cartagena. And he's going off, as you said, what he was told and what he remembers reading. Again, he doesn't have an exact recollection of everything in the document. Do you think the general statement that it did not comport with plaintiff's recollection of the content of the document? Correct. That should be enough, even though, at least in that line, he doesn't specify the way in which it does not comport with his recollection. But he does talk about all the things that he was told were going to be in it. Those are two different things, right? One is what the document said and what he was told the document said. The declaration is meant to be read as talking about what he was told was going to be in it and what he remembers reading in it. And then it doesn't comport with his recollection. So I think that the declaration has to be read in its totality and not analyzed line by line. And there's also other evidence that this is not the document. First, defendants in the court even refer to it as a draft agreement. And that's very significant. Because if you look at this, there's a corporate entity named on this. And this is in our FRCP 56D declaration. We say, who is this entity? We have no idea who it is. We have no idea who defendants claim that he allegedly assigned his rights to. And then we can go and we look. Well, there's no consideration stated on the face of this agreement. Nothing. It just says, for good and valuable consideration. I've never seen a contract drafted like this. And especially not for music. We have this law that cites contracts that are drafted identically. No, no. For good and value for unspecified consideration. And then we say that's when you can look to extrinsic evidence to see if someone was handed a check at the time. We'll presume that it says for consideration received. We're going to presume that consideration was received. You may not have seen it, but we have cases on points. Respectfully, the cases that defendants cited and that I reviewed, they all identified some indicia of actual tangible consideration. And then that was used to explain. He got a check. He got a check that was not identified. But I do want to get to that. He admits he took a check. Absolutely. And we were up front and we admitted that in the complaint. In no way, shape, or form was this ever hidden. But with the consideration not being stated on the face of it, there is a merger clause in this document. And the court relies on the merger clause elsewhere in our opinion. And here in this merger clause, the $5,000 check consideration is not stated on the face of the agreement. And remember, I'm making this point with respect to the best evidence rule. It's unusual that the amount of consideration would not be stated in a contract. I've never seen it in a music industry contract ever. It's usually what they care the most about. In addition, it also says that my client was working for hire and providing services to defendant Cartagena and this entity that we've never seen before. My client didn't even know defendant Cartagena when he wrote the initial version of the song. So how is that possible? How could this have been the agreement that he signed? Furthermore, he doesn't even know what this company is and no one's explained it. And this is all stuff that we ask to be explained, that we ask to conduct discovery in. Non-speculative discovery in the FRCP 56D declaration. And the only reference in the lower court's opinions to our declaration, she just says it's speculative. But she doesn't explain what particular request. As to what you would hope to discover if it were to go to discovery. Yeah, absolutely. So one, is this in fact because we're talking about the best evidence rule here. And I do want to get to the statute of frauds argument, but I do want to address exactly what you're talking about. Yeah, take a minute. Just talk about the issue you have right now. With the FRCP 56D declaration that we filed, we specified we want to look into what is this company. This company may be entirely unrelated to this transaction, and nothing may have actually been transferred to it. It could have been supposed to be another entity. It could have supposed to have been defendant Carter himself or some of the other songwriters. We also said we wanted to talk to some of the other defendants. I'm not sure I understand why the company matters. The question is, did he sign the thing or not? I thought you were going to say something like, well, if we got emails back and forth between various people, maybe there would be multiple drafts of this thing, and then there would be a dispute over whether this really is the thing that was brought to the IHOP and signed. Well, I was getting to that, but the- I'm not sure what the relevance of- The relevance of the company is that we believe that this is a draft document that was used for another transaction, and that it was then repurposed for this, and that this is an initial draft version and is not the final version that he signed. So that's what we're going back to. I don't remember what he signed. You just told us. I'm sorry? He doesn't remember what he actually signed. Correct, but I'm saying that there's indicia in the record that we should have been allowed to conduct discovery to figure out if this, in fact, was an initial draft document for some other transaction. This company has no known relation to this song or the royalty splits. The lack of consideration is glaring. So the argument about the company being in there, if I understand your argument correctly, is because this company has nothing to do with your client, it's implausible that that would be the document brought to the IHOP. There would have been some more finalized and more customized document that would have been brought, and that's the kind of thing you'd like to look for in discovery. Exactly. And the other thing that I have to go back to is this document says my client was working for hire and providing services for this company, and he has never heard of it. And we asked about this. We said, can we get discovery on what this company is and what happened with this agreement and why it looks like this? And we never got any of it. And the other thing is that, well, I think that. Well, I think there's questions. Yeah, of course. So, counsel, I'm confident your opposing counsel won't get to this because they have their own arguments. But in addition to the parties that actually filed the motion for summary judgment that led to the ruling that we're looking at. Yes. Just in footnote eight and nine, the district court throws out a whole bunch of other claims and throws out a whole bunch of other parties. And we did some sort of tracking through the docket. It looked like there were parties who had appeared but were in default. No, parties who had been served but were in default. Parties who had appeared but not moved for summary judgment or dismissal. Parties who hadn't been served. There's a whole variety of statuses of other defendants who were non-moving here. Do you have any arguments separate from even if these moving defendants should have prevailed? Should we consider separately this question of footnote nine that throws everything against everybody out? Well, yes. And this kind of goes to the declaration of authorship claim that I was starting in is that there were a whole bunch of claims and there was a whole bunch of defendants that were summarily dismissed from the case without any FRCP 56-F notice. And we think that's a clearly reversible error. We were given no notice that any of this was on the chopping block. It was kind of just as an afterthought thrown in. And we think that that's clearly a reversible error. And we should have been given the, you know, we should have been in notice of the arguments or the bases of why the declaration of authorship claim was going to be dismissed. Why the negligence claim was going to be dismissed. Why the defendants who had not moved were going to be dismissed. Thank you. Yes. Why didn't you just plead unconscionability at all? You don't mention it. It's clear that your client lost some important rights. And the contract, the alleged contract he signed is unconscionable, looks unconscionable to me. Why didn't you plead that? It's an equity complaint. Your Honor, I think it's encompassed in the fact that we did make the fraud and the inducement argument. We did make the breach of the fiduciary duties argument. We did make the argument that, you know, this argument, well, this, I think it's encompassed in all the arguments that we did make. We advanced a great many arguments pointing out that the unsigned draft which violates the statute of frauds in 204A of the Copyright Act, it's unsigned, and really this dispute we're having here today, we shouldn't be having it. The statute of frauds section in the Copyright Act is here to essentially short circuit these types of credibility disputes. When you don't have the signed document, that's it. And you're not supposed to be relying on affidavits and declarations and parole evidence. And the lower court's opinion really did not take that into account. But going back to the unconscionability, it is unconscionable. And it did also, and in addition to the fraud arguments we made and the breach of fiduciary duties, it also lacked consideration. Not just because it wasn't on the face of the agreement. It's also because my client was an author and an owner of the song when he sat down to sign this agreement. And when he signed this agreement, he was probably owed in the realm of six figures, about $100,000. And so essentially what Defendant Fat Joe... Right. But what is the legal effect of that? The legal effect is that this is illusory consideration. If you owe me $100,000 and you give me a $5,000 check and you say, oh, well, now I have all your rights, that's illusory consideration in all 50 states and the contract's null and void. Unless you say, okay, I'll take it. Well, no. Even if you take it, if you provide something that's already owed, it's not valid consideration. It's not valid consideration. And we raised this argument, as well as the declaration of authorship argument. We raised it, and we were standing on our heads the whole lower court case for about three years. And never once did the lower court address the illusory consideration argument. And I think it's one of our strongest arguments, and we win the entire case on that alone. Our client was owed a great deal of money. We've kept you up considerably past your time. Why don't we hear from opposing counsel, and then we'll see you again for rebuttal. Thank you. Ms. Blackman. May it please the Court. There's one issue that I want to make sure the Court appreciates, is that there has been no argument that Judge Buchwald abused her discretion on admitting this evidence into the record. And with respect to some of the questions that the panel has asked, of course, Judge Nardini, you found the only statement about the terms of the contract and what he did and didn't remember. But there's something else here as well, which is the fact that the case was framed not as a breach of contract case, not you breached your promise to give me credit or you breached your promise to give me money. It was framed as a fraud case, basically admitting that those terms were not in this agreement. So even putting aside all the hallmarks of the evidence, the fact that every stone was unturned to try to find the original, the fact that the plaintiff had no evidence to create a genuine issue of material fact, nothing to dispute. We have evidence on one side, nothing on the other. Let me ask you that, though. You know, he does say, and doesn't he put his toe across the line, when he says, to my recollection, from what I could understand, it seemed to state I was going to be compensated. And I understand your argument would be, sure, and he was. But it said, and credited as a writer. Isn't that a specific averment on his part that he recalls that the contract said he was going to be credited as a writer? And as I recall, the contract you produced did not say that he would be credited as a writer, right? The contract we produced said you will not be given credit. All your moral rights are assigned. Doesn't that create a genuine dispute of material fact? He says, I recollect, it said I was going to be credited as a writer. And you say, well, no, here's the paper that says it was. So he's basically saying, yeah, that's not the paper I signed. You may think, you know, he's a liar, he has a bad memory and all that, but aren't we now faced with a dispute of fact? And that's what juries do, is decide who's telling the truth. Correct. So he actually doesn't say, doesn't dispute that he signed it. He said, this doesn't comport with my recollection. Right. He's saying, I didn't sign that. I signed something, but I didn't sign that thing. The thing that the other side has produced, that's not the thing I signed, because I recall it said something different. Correct. Well, there's a couple of challenges with that. One is he doesn't, he's got to create a genuine issue of material fact, and he doesn't say what the terms were. He doesn't say how the credit was supposed to be issued. He didn't say how, when he was supposed to be paid, how many times. But he knew he was supposed to be given credit. He remembers that. Does he have to remember the whole contract? If he remembers one thing, if he said, I remember the thing was written in green ink, that's all I remember, and you were to produce something that you purported to be the original, it was in red ink, and he said, yeah, that's not it. I don't know what it said, but I know I'm not colorblind, and I know it was in green ink. I can't remember a single word in the contract. That would be enough, wouldn't it? But he doesn't say. Just answer my hypothetical. Sure. Wouldn't that be enough? Well, that's not the same factual situation here. Exactly what I asked. He doesn't. I'm asking a hypothetical question. Answer my hypothetical. Sure. If he said, I remember that the contract was in green ink, then that would be one thing. But here he's saying, I don't remember what color the contract was in, but I think it might have been in green ink. Well, he didn't say it might have been. He said it said I was going to be credited as a writer. He said the document does not comport with my recollection of the document I signed, and he believes that he was going to be compensated and credited as a writer. If that was the case, why didn't he sue for breach of contract for failure to give credit? Now you're attacking the credibility of the statement. You're saying it's not believable. If that's true, why didn't he do X is an attack on credibility. But now we're at Rule 56. We don't look at the credibility of the statement. We just ask, did he make the statement? That's correct, but he also gives no detail. He actually says elsewhere that he does not recall. We talked about it in the brief. I only saw it for 30 minutes. It was three years ago. And yet the one thing he says is it seemed to state that A and B. So we're saying, and so your view I understand is the same. Because he couched his recollection in A, to my recollection, and B, from what I can understand, and I guess three, it seemed to state that those three, I said, I don't know if you want to put them, approximations or sort of caution parentheses, cumulatively make his recollection so soft and fuzzy as to not constitute a genuine disputed material fact, that he's sort of added three levels of caveat that make it so fuzzy that it's not really him making the assertion. Is that a fair characterization you're arguing? It is, and actually I just, so if you look at what he says, he says at all points it was understood that I was going to be credited as an author and a creator of the song. It doesn't say this agreement said I was going to be credited. That I understand, that the discussions, the oral discussions, your argument is that makes no difference. Because in a way his argument is that, you know, if I was told something, but I was, I signed a piece of paper that said something totally different, I was fraudulently induced to sign something I didn't, that was different. They promised me it would say X, instead it said Y, and therefore I get out of the contract. I get that argument. And I understand you're saying that's why the oral statements have no bearing on what his recollection claims to be about the paper. Right, but his recollection. But what I'm asking is why is it that his purported recollection is, I guess in your view, too fuzzy to constitute genuinely putting the content in dispute. Right, so first of all, again, assuming that there's an abuse of discretion admitting this in the first place, all we have is in this declaration we have two very short sentences on this point. One is at all points it was understood I was going to be credited. And then the other, the only other paragraph, paragraph seven says, the document produced by Defendant Cartagena does not comport with my recollection of the document I signed. And that's not enough to create. Which appendix page are you on? I'm on page 485. There's also the one at 328 and 29, right? Correct. Yes. Which I think is what Judge Nardini was reading from a moment ago. I think it's the one on 494 is effectively quoting from the 328 to 29, I think. I think it's the same language one is quoting the other, right? Correct. Yes, they do refer to each other. And, you know, he contradicts himself. He says I was given a minute or two to review it. Then he says I had 30 minutes to review it. In any case, he never asked for it. And he says from what I could understand. But he says he has no understanding. There's just a lot of paradoxes and contradictions in his testimony that don't create. It's very, you know, self-serving testimony doesn't create an issue of fact. It sure does. I've never understood when people say self-serving testimony doesn't count, right? I mean, what do you expect him to put in? I mean, he's a party, so he's going to say things. So if he had said I went to the IHOP and I read this contract and it didn't say anything, this is not the document. You can't just say, oh, that's self-serving testimony. What, he's got a motive to lie to serve himself? Well, of course. I mean, every party puts in their stuff. And you can attack it as self-serving. But that goes to credibility. That's not a Rule 56 stage thing, right? That's an argument to a jury. Credibility, yes, is a generally credibility would be a question for the fact finder. But here we don't have facts. We just have speculation saying I speculate. It seemed to state from what I could understand that I was going to be compensated and credited as a writer. But yet he's not claiming breach. I mean, what is this case really about? Let me ask you, is there a threshold for the document? So let's say instead of Mr. Elliott sort of saying, look, I remember this about it, but not this, I'm not quite sure. Let's just say he says, you know what, that month of my life is a blur. I don't remember anything about what was in that document. Let's assume that's it. But the document itself names a company that has nothing to do with this, is unsigned, contends that Mr. Elliott is working for hire, which he's very clearly not, and has no signature block at all or any recognition or any mention sort of in terms of the agreement. It mentions that Fat Joe is the one who's put this song out, but doesn't seem to bind him in any way. So is there some threshold for how I know you won't concede this agreement meets it, but doesn't the proposed unsigned document that you're saying entitles you to summary judgment, doesn't it have to have some weight, some credibility itself before we grant summary judgment on it without discovery? That's where I don't understand is why you would say, look, we don't think this is good enough, his response, but then not say to the judge, so let's go ahead and have limited discovery on how this document was created, the exchanges between people about it. I don't understand why we didn't go down that road here. Sure, well, there are a couple angles to that. One is there was limited discovery on how that was created. There were e-mails produced. The plaintiff had the opportunity to challenge the process, challenge what was done. There are declarations describing in great detail. Judge Buchwald, we actually showed up looking to move to dismiss, and Judge Buchwald saw that both parties were talking about an agreement, and she said, produce the agreement. And there was a lot of information provided about that. But it was about what happened to the final agreement, I thought. The timing is very, very tight. So the agreement is drafted. It has Mr. Elliott's name, his driver's license number on it, his date of birth. There are copies of the driver's license that were provided. The back and forth is there. R4SoValid is a publishing, this is publicly available to find, is a publishing name that is affiliated with my client, with Mr. Cartagena. I guess I have a lot here. And so there's nothing, the form, the fact this is work for hire, this is a form drafted as a standard music industry contract, drafted by a very experienced music industry lawyer who talked about her experience. But Mr. Elliott was not experienced. He was taken advantage of. Correct, but in terms of challenge, well, he was not taken advantage of because he actually didn't write, he concedes he didn't write the lyrics. He showed up to a session one day, this is his allegations. He showed up to a session, said a few words, and apparently one phrase that he alleges he wrote ended up in a recording. That's what happened. And that's based on his own testimony and the exhibits. But from the perspective of validity, this actually is a standard music industry contract, and they all say this, it's work for hire, and if not, it's an assignment, because it actually has that sort of belt and suspenders language. If it's not a work for hire, it's an assignment. It's got all the hallmarks of clarity. And by the way, it's also very clear, the entire understanding, no additional compensation will be due, no moral rights, no royalties. Additional beyond what? Compensation. But additional meaning beyond what? The check. The check that was provided. The consideration I'm providing herein is everything. It's very clear, be all and end all, you're getting this check. I mean, I think if I'm following, if I can follow up, that presupposes additional to X, right? You're positing that the $5,000 check is X, right? But I think the other side is claiming, well, the compensation, even assuming this is a valid contract, was the $5,000 check and the promise of additional future checks and the getting credit as a writer. And sure, okay, you want to go to parole evidence and you want to go to extrinsic evidence to find out what was the X. Okay, but just because he took $5,000 doesn't necessarily mean that is all of the X he ever got because a promise can be a valid consideration, right? It can be, but when you settle a claim and you take the money for the settlement, you can't come back and then say, well, maybe I was owed something more. This contract is very- No, no, no, no, his claim is not a maybe. His claim was I was given a check and a promise of more money and a promise I'd be credited as a writer, three things. And he would help with his career. Yeah, I guess there's number four, right? He said I was owed four things, and yeah, I took it. And how's he going to- And you come in and say, well, I can prove one of those things, and therefore you only get the one of the things. No, how- How does that work? Right, the agreement, though, is very clear. So basically- No, the agreement does not specify what the consideration is. The agreement does specify the consideration being provided here. And by the way- You see, but right, it could be a promise. A promise is valid consideration, and if the promise was given and accepted at that moment, that consideration was received at the moment. It wasn't specified. See, that's the problem. You're going to parole evidence to find one thing, and then you're cutting off his parole evidence to prove, no, no, no, it was more than the $5,000 check. We're not claiming that he was owed more. The contract says this is it and everything. The consideration set forth above is full and complete consideration. And $5,000 is not set forth above, right? It's the consideration, the receipt and sufficiency of which. Receipt and sufficiency of which. And if you receive a promise, right, you can receive a promise. It doesn't say, oh, and it's a check, but it's not a promise. It's a promise to agree- How could you- I just, I don't understand how one could- I promise to give you credit on this song. And then yet the next sentence says you are not going to be credited on this song? Or I promise I'm going to, whatever, you know, give you a leg up in the industry, whatever it is. Well, he didn't actually testify to that, but still, it says literally there is nothing else you're owed. This agreement contains the entire understanding of the parties here to- That's a legal term, counsel. Do you think that Mr. Elliott understood the legal terms or the legal import of this agreement? He was not very well educated, to the best of my knowledge. He was dealing with someone who was very active in the business, and I think he was taken advantage of. We dispute it. We believe that the approach and the facts here suggest that he's claiming that he wrote something that he admits he didn't write. I don't agree with that, but putting that aside, the agreement is- The law doesn't permit that kind of argument. The law might permit that argument if we gave him this contract in German and he didn't understand it because they knew he didn't speak German. But the standard of the case standard says that if there's a merger clause, if there are provisions in this agreement, you can't just suddenly say three years later, I didn't understand it. He didn't reach out. He didn't do anything. But you are going outside the four corners of the document, right? We're not- You're going outside to prove that $5,000 was the consideration that was not mentioned in the agreement, right? You're going outside the four corners of the document to tell us what the consideration was, right? To Your Honor's point previously, there is language in contracts that say the receipt of which is hereby acknowledged. And if I read that document, I have no idea that there was a $5,000 check, correct? Correct. You don't know the amount. You know there was something. You've got to go outside the four corners of the document to figure out what the consideration was, right? Well, there's an admission to the check. There's a receipt of the check. Hang on. Just focus on my question. Yes. You have to go outside the four corners of the document to figure out what the consideration is, right? Yes, but that's not parole- You would have us go outside the four corners to figure out that it's the $5,000 check, right? Yes, but that's not parole evidence. And by the way, we're talking about summary judgment. He admitted he received a $5,000 check and never received anything else.  But he claims he received the promises. He claims he- he doesn't really claim he received- he doesn't testify to that. There are references in the complaint. And then he says, but I was defrauded. So, I don't- he's not- he really does not say, and I think- He said, he told me I was being treated like everyone else. I was going to get some money then, more later, that we were going to be working together in the studio, and that he was going to promote me as an artist and also my songs. That's in testimony, right? That's in testimony, but it doesn't say that's in the agreement. He does not say that's in the agreement. $5,000 is in the agreement. That's the thing. You keep wanting to go outside the agreement to find one fact and say, oh, and by the way, this is the only fact. There are other facts. Now, you may be entirely right that, again, if there's discovery and there's a jury, and they say, yeah, of course, you know, nobody ever said that to him. He's making this up. He was not taken advantage of. He basically did no work. He got lucky even just getting a $5,000 check, and those may be the facts. I think the question is at this stage when we're at summary judgment, is there been a material dispute or genuine dispute about some of those facts? And, you know, maybe you would ride to a crushing victory before a jury. Maybe, maybe not. But the question is at this stage of the game, is this it? Was there not even supposed to be discovery? So I think we have, I think we've kept you up plenty long. We appreciate your arguments. Why don't we hear from Mr. Floor? You have two minutes to reply. Yes. Is it possible I could just clarify? We have kept you up, and I do appreciate your briefs are thorough, so let's just hear from Mr. Floor. Okay. Thanks. And we're going to, because we have kept you all up considerably, we're going to hold you tight into the two minutes. Just a few brief points. Hopefully I won't even use up the whole two minutes. But with respect to the FRCP 56-D declaration, not granting us discovery was an abuse of discretion. In fact, only defendants were allowed discovery in this case. Plaintiffs were not allowed to conduct any discovery. We had our hands tied the entire time. Never seen anything like that. Did you ask for discovery? Absolutely. We filed a huge declaration. It laid out specifically what we wanted and why we needed it. For instance, the chain of custody, where this document went, how it became lost. What Defendant Cartagena, what Fatjo said in his declarations was entirely speculative. I may have given it here. He gives no details on where he keeps his documents, his document retention procedures, what could have possibly happened. We asked for discovery on that. We're entitled to that. It's his burden to prove under the best evidence rule. And that was never granted. It was never done. With respect to the notion that my client did not write the song, my client, along with Defendant Shandell Green, who never appeared in this action, who's one of the main bad actors, he wrote this song. Well, I think at this point, we understand these are all disputed points of fact. And I think to hear one side's version of the facts is not particularly helpful at this point. And lastly, the identity of R-4 so valid, that corporate entity. It's the first time I've heard anything about it is here on appeal. We don't think it's valid to consider that. And we should also have been entitled to discovery on that. My client certainly wasn't working for hire for that entity. So I appreciate it. And one last thing. We also think that the statute of frauds short circuits a lot of this, and that we should have had our declaration of authorship jury trial completely independent of the contract validity issue. Whether he gets credit and whether he had career damage because he was not credited, you know, via negligence claim, it's a federal claim that is completely legitimate and should have been addressed. Thank you. Thank you. Thank you to both sides. Very well argued. It was a very vigorous argument, I think, on both sides. And we very much appreciate the advocacy on both parts. We will reserve decision. Thank you very much.